IN THE UNITED STATES DISTRICT COURT
FOR NORTH DAKOTA

| | | |
|---|---|---|
| LIBERTY LIFT SOLUTIONS, LLC, | § § | |
| *Plaintiff*, | § § | |
| v. | § § | CASE NO. _____ |
| PANHANDLE LIFT SOLUTIONS, LLC, | § § | |
| *Defendant*. | § § § | |

## ORIGINAL COMPLAINT

Plaintiff Liberty Lift Solutions, LLC ("Liberty Lift") files this Original Complaint against Defendant Panhandle Lift Solutions, LLC ("Panhandle") for misappropriation of trade secrets and tortious interference with contract.

## PARTIES

1. Liberty Lift Solutions, LLC is a Delaware limited liability company having its principal place of business in Houston, Texas.

2. Panhandle Lift Solutions, LLC is an Oklahoma limited liability company with its principal place of business in Oklahoma City, Oklahoma. Panhandle may be served via its registered agent Tim Long, 14000 Quail Springs Parkway, Suite 300, Oklahoma City, OK 73134.

## JURISDICTION & VENUE

3. This Court has subject-matter jurisdiction under 18 U.S.C. §§ 1331, 1332, 1367, and 1836. The parties are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.      Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in North Dakota.

## FACTS

### A.      Liberty Lift's Investments in Product Development

5.      Formed in 2012, Liberty Lift Solutions is a full-service artificial lift company known around the world for premium products, service, and customer care. Initially formed as a beam pumping unit manufacturing company, Liberty Lift has expanded its product line into most stages of the artificial lift lifecycle, including XL long-stroke units.

6.      Liberty Lift has invested years and millions of dollars in the design and engineering of its pumping units.  These design and engineering efforts are led by Liberty Lift's VP of Engineering, Sam Gandee, who has more than forty years of engineering experience with pumping units.

7.      Based on Liberty Lift's substantial investments of time and money, Liberty Lift developed manufacturing and engineering drawings for each part that comprises its beam and XL long-stroke pumping units.  Liberty Lift also developed manufacturing and quality processes and procedures for the manufacture of these pumping units.  These drawings and processes and procedures provide Liberty Lift a competitive advantage in the market because of the resulting superior quality, performance, and reliability of Liberty Lift pumping units.

8.      Liberty Lift's XL long-stroke pumping unit relies on the Unit Sentry, another key Liberty Lift intellectual property.  The Unit Sentry monitors operating

abnormalities, pausing or stopping the unit depending on the fault detected.  Among its many capabilities, the Unit Sentry can effectively calculate the speed and stroke position of the pumping unit in real time.  It reads and detects real-time load, vibration, speed, and lubrication system oil pressure, and records a log showing all events that occurred during operation. The Unit Sentry also allows operators to input custom defined faults to shut down the unit during any type of situation they define as critical.

9.      Communication from the Unit Sentry can be configured to interface with rod pump controller systems, including pump off detection. This capability allows the XL to provide continuous operating surveillance and downhole diagnostics through a 'plug and play' connection, relaying pertinent operating information to well analysts for pump card analysis and trends.

10.     The Unit Sentry depends on software code that was developed by and for Liberty Lift and is not available to Liberty Lift's competitors.

11.     The XL long-stroke unit also features Liberty Lift's hydraulic rollback system, which allows the pumping unit to move off the wellhead without the need for a crane or tractor.

12.     The XL long-stroke unit's lubrication system is also unique.  Liberty Lift designed a non-splash lubrication system to provide uniform oiling of internal sprockets and chain.  This Liberty Lift feature greatly improves the life of the chain, traversing mechanism, and sprockets of the pumping unit.

13.     Liberty Lift limits access to its design information, drawings, processes, procedures, and Unit Sentry source code to those personnel who have a need for the information.  Liberty Lift employees sign non-disclosure agreements at the start of their employment.   Liberty Lift treats this critical intellectual property as confidential and does not disclose its designs, drawings, processes, procedures, or Unit Sentry source code to its competitors or persons outside the company not bound by a non-disclosure agreement.

**B.      Liberty Lift's Manufacturing Agreements in China**

14.     Since its formation in 2012, Liberty Lift has developed relationships with contract manufacturers in China for the manufacture of its beam and XL long-stroke pumping units and parts.

15.     For example, in 2013 Liberty Lift entered into an agreement with Shengli Oilfield Highland Petroleum Equipment Co., Ltd. for the manufacture and distribution of conventional and enhanced geometry surface pumping units and their components and counterweights.

16.     The agreement provides that Liberty Lift "owns and retains the sole and exclusive rights" in all of "Liberty Lift's Specifications," including know-how, methods, processes, systems, trade secrets, proprietary designs, manufacturing techniques, engineering data, and confidential information related to the manufacture of the products.  At the end of the agreement, the manufacturer agreed that it would not use Liberty Lift's intellectual property in any way.

17.    Liberty Lift entered into similar agreements with each of its other Chinese manufacturers for the purpose of protecting its intellectual property.

18.    One of Liberty Lift's suppliers employed Mr. Li Qiangling ("Mr. Li").  Mr. Li's employer agreed to protect Liberty Lift's intellectual property, which was a condition precedent to Liberty Lift doing business with any company.

### C.    Mr. Li's Misappropriation of Liberty Lift Trade Secrets

19.    After several years selling Liberty Lift pumping units and components manufactured to Liberty Lift's exacting specifications, Mr. Li abruptly presented Liberty Lift with an ultimatum.  Mr. Li demanded that Liberty Lift make his company its exclusive supplier.  Liberty Lift rejected the ultimatum, which would pose a significant risk to Liberty Lift's supply chain and business.  Liberty Lift ceased doing business with Mr. Li.

20.    Since that time, Mr. Li has engaged in a calculated campaign to interfere with Liberty Lift and misappropriate its trade secret information.  Mr. Li has joined with, among others, Ren Mingcheng, Han Guangjian, and Meng Fanwei—former employees of Liberty Lift manufacturers in China—in this campaign.  Each of these individuals had direct access to Liberty Lift trade secret information that was provided to Liberty Lift manufacturers under the protection of non-disclosure and confidentiality agreements.

21.    On information and belief, Mr. Li and his co-conspirators have misappropriated and wrongfully taken possession of Liberty Lift designs, drawings,

processes, procedures, and source code that had been sent to Liberty Lift manufacturers under the protection of non-disclosure agreements.

22.    Mr. Li has used Liberty Lift's confidential drawings to file for Chinese patents.   Mr. Li, his co-conspirators, and his affiliated companies then used these patents based on Liberty Lift's drawings to interfere with Liberty Lift contract manufacturers.   The Chinese courts found that Mr. Li based his patents on Liberty Lift's drawings and rejected his attempted interference with Liberty Lift's manufacturers.

23.    On information and belief, Mr. Li and his co-conspirators continue to misappropriate Liberty Lift's trade secret information related to beam and XL long-stroke pumping units, including design information, drawings, processes, procedures, and source code.   Mr. Li, his co-conspirators, and their affiliated companies are now using Liberty Lift's intellectual property to manufacture beam pumping unit parts and XL long-stroke pumping units that are identical to Liberty Lift's parts and/or incorporate Liberty Lift design elements and features.

24.    Neither Mr. Li nor his co-conspirators are authorized to possess or use any of Liberty Lift's confidential or trade secret information.

**D.    Panhandle's Misappropriation of Liberty Lift Trade Secrets**

25.    Mr. Li, his co-conspirators, and their affiliated companies are now selling pumping unit parts to Defendant Panhandle that are based on and/or copied from Liberty Lift's misappropriated trade secrets.   Defendant Panhandle has also purchased a long-stroke pumping unit manufactured by Mr. Li, his co-conspirators, and their affiliated companies.   Defendant has that long-stroke pumping unit in

North Dakota and is marketing it to customers in North Dakota. Defendant intends for these pumping units and parts to be used in interstate commerce.

26.     On information and belief, Defendant's long-stroke pumping unit is the product of misappropriation of Liberty Lift's trade secrets by Mr. Li and his co-conspirators. Based on images of Defendant's long-stroke pumping unit, it appears to incorporate Liberty Lift's load belt end connector with roller system, prime mover mounting system, adjusting rails, and v-belt tensioning system. It appears to use Liberty Lift's Unit Sentry monitoring system. The emergency brake mounting and design appear to be Liberty Lift's design, and the unit has a mounting location for Liberty Lift's rollback system.

27.     On information and belief, Defendant's long-stroke pumping unit likely also uses Liberty Lift's chain oiling system, sump filtering system, and sprockets.

28.     Liberty Lift brought its misappropriation concerns to Defendant's attention. Liberty Lift informed Defendant of the confidentiality agreements with Liberty Lift's contract manufacturers and of the incorporation by Mr. Li and his co-conspirators of Liberty Lift design elements and features into Defendant's long-stroke pumping unit. Liberty Lift requested an opportunity to inspect Defendant's long-stroke pumping unit, but Defendant refused that request.

29.     Defendant chose to simply ignore Liberty Lift's confidentiality agreements with its manufacturers. Instead, Defendant claimed that it was unaware of any contracts between Liberty Lift and its customers.

30.     Following an in-person inspection of Defendant's long-stroke pumping unit, its internals, and source code, Liberty Lift expects to identify many more misappropriated design and feature elements.

## CAUSES OF ACTION

## COUNT ONE – DEFEND TRADE SECRETS ACT CLAIM

31.     Liberty Lift incorporates by reference all of the factual allegations in this Original Complaint.

32.     Liberty Lift brings a claim for misappropriation of trade secrets against Defendant under the Defend Trade Secrets Act, 18 U.S.C. § 1836(b).

33.     Liberty Lift is the owner of protectable trade secrets related to its beam and long-stroke pumping units and related parts and components.

34.     These trade secrets include engineering designs, drawings, manufacturing and quality processes and procedures, know how, and source code.

35.      Liberty Lift has taken reasonable measures to keep secret these trade secrets.  These efforts include limiting access to necessary personnel, requiring non-disclosure and confidentiality agreements of employees and vendors, limiting physical access to Liberty Lift offices, and using passwords and other security measures on computerized systems.

36.     Liberty Lift derives independent economic value, both actual and potential, from its trade secrets not being readily known or ascertainable through proper means.

37.     Defendant misappropriated Liberty Lift's trade secrets by disclosing and/or using the trade secrets without Liberty Lift's authorization or consent.  Liberty

Lift has provided notice to Defendant Panhandle that Liberty Lift's trade secrets were acquired by Mr. Li and his co-conspirators by improper means. Mr. Li and his co-conspirators took Liberty Lift's trade secrets from Liberty Lift's manufacturers even though they knew that confidentiality and non-disclosure obligations prohibited the use or disclosure of Liberty Lift's trade secrets. But Defendant apparently intends to keep using Liberty Lift's trade secrets by selling products copied from such trade secrets despite its knowledge of the misappropriation by Mr. Li and his co-conspirators. Defendant knows or has reason to know that it has acquired knowledge of Liberty Lift's trade secrets from Mr. Li, his co-conspirators and their affiliated companies even though Mr. Li, his co-conspirators and their affiliated companies (i) used improper means to acquire knowledge of the trade secrets by stealing the trade secrets from Liberty Lift's manufacturers, and (ii) acquired knowledge of Liberty Lift's trade secrets under circumstances—such as express confidentiality agreements—giving rise to a duty to maintain secrecy and limit use of the trade secrets.

38.    Liberty Lift has suffered and will suffer actual losses that include lost profits and the destruction of the value of its trade secrets from improper disclosure and use. Liberty Lift's expected actual losses exceed $1,000,000, given the value of its trade secrets.

39.    Liberty Lift also seeks an award for damages for unjust enrichment caused by the misappropriation of its trade secrets by Defendant.

40.    Liberty Lift also seeks exemplary damages because Defendant's actions after receiving notice of the misappropriation were willful and malicious.

41.    Liberty Lift also seeks a permanent injunction to prevent actual and threatened misappropriation of its trade secrets.

## COUNT TWO – NORTH DAKOTA TRADE SECRET MISAPPROPRIATION (ND ST 47-25.1—01 ET SEQ.)

42.    Liberty Lift incorporates by reference all of the factual allegations in this Original Complaint.

43.    Liberty Lift brings a claim for misappropriation of trade secrets against Defendant under North Dakota Century Code, Title 47, Chapter 47-25.1.

44.    Liberty Lift is the owner of protectable trade secrets related to its beam and long-stroke pumping units and related parts and components.

45.    These trade secrets include engineering designs, drawings, manufacturing and quality processes and procedures, know how, and source code.

46.    Liberty Lift has taken reasonable measures to keep secret these trade secrets. These efforts include limiting access to necessary personnel, requiring non-disclosure and confidentiality agreements of employees and vendors, limiting physical access to Liberty Lift offices, and using passwords and other security measures on computerized systems.

47.    Liberty Lift derives independent economic value, both actual and potential, from its trade secrets not being readily known or ascertainable through proper means.

48.     Defendant misappropriated Liberty Lift's trade secrets by disclosing and/or using the trade secrets without Liberty Lift's authorization or consent. Liberty Lift has provided notice to Defendant Panhandle that Liberty Lift's trade secrets were acquired by Mr. Li and his co-conspirators by improper means. Mr. Li and his co-conspirators took Liberty Lift's trade secrets from Liberty Lift's manufacturers even though they knew that confidentiality and non-disclosure obligations prohibited the use or disclosure of Liberty Lift's trade secrets. But Defendant apparently intends to keep using Liberty Lift's trade secrets by selling products copied from such trade secrets despite its knowledge of the misappropriation by Mr. Li and his co-conspirators. Defendant knows or has reason to know that it has acquired knowledge of Liberty Lift's trade secrets from Mr. Li, his co-conspirators and their affiliated companies even though Mr. Li, his co-conspirators and their affiliated companies (i) used improper means to acquire knowledge of the trade secrets by stealing the trade secrets from Liberty Lift's manufacturers, and (ii) acquired knowledge of Liberty Lift's trade secrets under circumstances—such as express confidentiality agreements—giving rise to a duty to maintain secrecy and limit use of the trade secrets.

49.     Liberty Lift has suffered and will suffer actual losses that include lost profits and the destruction of the value of its trade secrets from improper disclosure and use. Liberty Lift's expected actual losses exceed $1,000,000, given the value of its trade secrets.

50.     Liberty Lift also seeks an award for damages for unjust enrichment caused by the misappropriation of its trade secrets by Defendant.

51.     Liberty Lift also seeks exemplary damages because Defendant's actions after receiving notice of the misappropriation were willful and malicious.

52.     Liberty Lift also seeks a permanent injunction to prevent actual and threatened misappropriation of its trade secrets.

### COUNT THREE - CIVIL CONSPIRACY

53.     Liberty Lift incorporates by reference all of the factual allegations in this Original Complaint.

54.     Defendant Panhandle formed a plan and agreement with Mr. Li, his co-conspirators, and their affiliated entities to sell pumping units and pumping unit parts that were copied and/or derived from Liberty Lift's trade secrets in direct competition with Liberty Lift.

55.     Defendant Panhandle, Mr. Li, his co-conspirators, and their affiliated entities intended to harm Liberty Lift by using Liberty Lift's trade secret information to compete against Liberty Lift.

56.     Defendant Panhandle, Mr. Li, his co-conspirators, and their affiliated entities committed an unlawful, overt act by stealing, using, and disclosing Liberty Lift's trade secret information without authorization or permission.

57.     Defendant Panhandle, Mr. Li, his co-conspirators, and their affiliated entities' overt acts caused Liberty Lift damages.

## COUNT FOUR – UNJUST ENRICHMENT

58.     Liberty Lift incorporates by reference all of the factual allegations in this Original Complaint.

59.     Defendant Panhandle was enriched.

60.     Liberty Lift was impoverished.

61.     There is a nexus between Panhandle's enrichment from the improper use of Liberty Lift's intellectual property and the impoverishment of Liberty Lift.

62.     There was no justification for the enrichment and impoverishment.

63.     The law fails to provide a remedy for the harm to Liberty Lift.

## PRAYER

Liberty Lift respectfully requests that the Court render judgment in its favor and against Defendant Panhandle for:

- actual damages;

- damages for unjust enrichment;

- exemplary/punitive damages;

- prejudgment and postjudgment interest;

- reasonable costs and attorneys' fees;

- a permanent injunction restraining any actual or threatened misappropriation of Liberty Lift's trade secrets; and

- all other relief to which Liberty Lift proves itself justly entitled.

Dated: May 8, 2024                    Respectfully submitted,

                                       */s/ Christopher M. Hogan*


                                      **HOGAN THOMPSON SCHUELKE LLP**

                                      By:  */s/ Christopher M. Hogan*
                                      Christopher M. Hogan (#09612)
                                      chogan@hoganthompson.com
                                      1001 Fannin, Suite 4775
                                      Houston, Texas 77002
                                      Telephone: (713) 671-5630
                                      Facsimile: (713) 671-5632


                                      **MURPHY BALL STRATTON LLP**

                                      Land Murphy (*pro hac vice* forthcoming)
                                      Texas Bar No. 24058010
                                      lmurphy@mbssmartlaw.com
                                      1001 Fannin, Suite 720
                                      Houston, TX 77002
                                      Tel: 281.658.9060

                                      ***ATTORNEYS FOR***
                                      ***PLAINTIFF LIBERTY LIFT***
                                      ***SOLUTIONS, LLC***